IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JOSEPH MONTRAIL DOZIER,

    Defendant.

Case No. 5:19-CR-40096-HLT

## MEMORANDUM AND ORDER

Defendant Joseph Montrail Dozier moves to suppress evidence obtained from a search of his home. Doc. 43. He contends that the state court search warrant is not supported by probable cause and did not describe with particularity the items to be seized. He also moves for a hearing under *Jackson v. Denno*, 378 U.S. 368 (1964), to determine the voluntariness of any of his statements that the government intends to use at trial. Because the search warrant is supported by probable cause and the good faith exception upholds the search of Dozier's home, the Court denies the motion to suppress. The Court also finds that Dozier's statements to law enforcement were freely and voluntarily made and denies that portion of the motion.

### I.    BACKGROUND[1]

In 2016, FBI Task Force Officer Patrick Salmon and FBI Special Agent Ian Knooihuizen initiated a long-term narcotics distribution investigation into Dozier. On September 17, 2019,

---

[1] During the April 8, 2021 hearing, the Court heard testimony from FBI Task Force Officer Patrick Salmon and FBI Special Agent Ian Knooihuizen. Based on the witnesses' demeanor and attentiveness during questioning—and given that, at times, they conceded facts not helpful to the government's case—the Court credits their testimony in its entirety. But the Court relays only those portions of their testimony relevant to its resolution of the motion. The Court also admitted Government Exhibits 1-3, and the Court considers Dozier's supplemental brief in resolving the motion. For ease of the record, the Court cites to the attachments to Dozier's motion when citing a duplicate of an exhibit offered at the hearing.

officers were conducting surveillance at Dozier's girlfriend's residence and observed a silver Infiniti arrive at her residence. Officers followed the Infiniti away from the location and observed that the driver drove in a pattern to basically check to make sure that nobody was on his tail. The driver then drove to Dozier's home, parked the vehicle, exited the vehicle with a black duffel bag that appeared to be weighted down, and entered Dozier's home. He left a short time later without the bag. The officers identified the driver as Antoine Dorsey.

After observing this activity, officers decided to apply for a search warrant for Dozier's home. Officers remained at the scene and secured the home, and TFO Salmon returned to his office to start working on the warrant papers. While TFO Salmon worked on the warrant, Dozier returned to his home. Officers prevented Dozier from entering it. During the encounter, officers observed marijuana in plain view, arrested him on the state charge of possession of marijuana, and seized two cell phones from his person. Dozier was then taken to the Topeka Police Department Law Enforcement Center.

The papers TFO Salmon prepared included a search warrant application with an affidavit. The affidavit is a combination of new information and information that had been used in previous federal and state search warrant affidavits for the investigation. The affidavit details the investigation and includes information from CS#1 and CD#1. The affidavit also states that there was probable cause to believe the following crimes have been or are being committed: possession of cocaine with intent to distribute, possession of drug paraphernalia for use and or sale, and Kansas drug tax.

TFO Salmon swore out the affidavit, and the on-call state district court judge reviewed the materials and signed the warrant at 9:06 p.m.  The warrant does not identify a specific crime and includes the following items to be seized: Cocaine, Drug Paraphernalia, Cellular Telephones,

United States Currency, Firearms, and Indicia. The search warrant does not incorporate by reference the affidavit.

Agent Knooihuizen then received a copy of the warrant and affidavit. He was the search team leader for the search of Dozier's home and was responsible for the overall organization of the search. His involvement with this investigation was "intimate," and he was the affiant for most of the federal warrants in this investigation. As the team leader, he gathers the search team, explains what the warrant is for, explains what they can seize, and goes over the general protocol for the search. In this case, the individuals assisting in the search were familiar with the investigation and none of them questioned what the warrant authorized.

After the search, the return states that the officers seized two Smith & Wesson firearms and ammunition, a Charter Arms firearm and ammunition, a digital scale, marijuana, THC paraphernalia, two cell phones, and a shotgun among other things. Officers also seized a ledger, which is not on the return but is listed on the FD-597 that was given to Dozier.

TFO Salmon was not present for the search. After the judge signed the warrant, TFO Salmon and FBI Special Agent Trisha McCormick went to the Topeka Law Enforcement Center to interview Dozier. They questioned him for approximately 23 minutes, and the interview was video recorded. TFO Salmon advised Dozier of his *Miranda* rights, and they stopped questioning Dozier after he said he would not speak further without an attorney.

Based on the evidence collected, a grand jury indicted Dozier on October 23, 2019, for possession of a sawed-off shotgun in violation of 26 U.S.C. § 5861(d) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Doc. 1. Dozier then filed the instant motion.

**II.     ANALYSIS**

Dozier moves to suppress the evidence obtained from the search of his home because the warrant was not supported by probable cause and did not describe with particularity the items to be seized. The government substantively disagrees with both arguments and alternatively relies on the good faith exception in *United States v. Leon*, 468 U.S. 897, 922 (1984), to uphold the search. Dozier also requests a *Denno* hearing to determine the voluntariness of any of his statements that the government intends to use at trial. The government contends Dozier's statements were freely and voluntarily made.

**A.     The Search Warrant is Supported by Probable Cause**

Dozier first argues that the search warrant is not supported by probable cause. The Fourth Amendment protects the right of citizens to be free from unreasonable searches and seizures. U.S. Const. amend. IV. To protect against unreasonable searches and seizures, the Fourth Amendment mandates that a warrant must be supported by probable cause. *United States v. Russian*, 848 F.3d 1239, 1244 (10th Cir. 2017). And an affidavit in support of a warrant establishes probable cause when it contains "facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

The Court finds the affidavit establishes probable cause. TFO Salmon swore out the affidavit. The affidavit outlines his experience and things known by him based on this experience. Doc. 43-1 at 7-9. The affidavit includes information from CS#1 and CD#1. CS#1 engaged in three controlled purchases with James Wheeler and each time CS#1 purchased approximately 5 ounces of powdered cocaine. *Id.* at ¶ 2. The affidavit then notes that Dozier's name and contact information were in a text message of Wheeler's cell phone. *Id.* at ¶ 4. The affidavit also details

4

information from CD#1 including that CD#1 stated that Dozier is a multiple kilogram supplier of powdered cocaine to Wheeler and Maurice Ross among others, makes frequent trips to Kansas City to pick up cocaine, and lives in the Montara neighborhood. *Id.* at ¶¶ 5, 20. The affidavit outlines Dozier's associations with Wheeler, Ross, and Antonio Vance (individuals identified as part of narcotics distribution investigations) and his close association with Dorsey (CD#1 identified Dorsey as a cocaine supplier). *See, e.g.*, *id.* at ¶¶ 4 (Wheeler), 11-12 (Dorsey), 20 (Ross), 25-26 (Vance), and 17-19 (trip to Dallas with Dorsey). The affidavit details Dozier's multiple trips to Dorsey's home, which included several trips a month and short visits. *See, e.g.*, *id.* at ¶¶ 11-12, 16, 21-22, 24, and 27. The affidavit also discusses Dozier's use of different vehicles and routes. *Id.* at ¶¶ 8, 13-14, and 23-24. Lastly, the affidavit details the events of September 17, 2019. *Id.* at ¶¶ 28-34. Based on all this information, the Court finds that the affidavit includes facts sufficient to lead a prudent person to believe that a search of Dozier's home would uncover contraband or evidence of criminal activity (*e.g.*, cocaine distribution).

Despite this information, Dozier contends the search warrant is not supported by probable cause because TFO Salmon's affidavit: (1) provides no verification of the veracity, reliability, or basis of knowledge of CD#1; (2) corroborates only innocent, innocuous information from CD#1; and (3) lacks information linking Dozier's home to any criminal activity. The Court disagrees and finds that none of these arguments undermine the finding of probable cause.

**First,** Dozier argues that the affidavit provides no verification of the veracity, reliability, or basis of knowledge of CD#1. The Court recognizes that demonstrations of veracity, reliability, and basis of knowledge for a confidential informant used to support a warrant affidavit are highly relevant. *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009). But the affidavit in this case establishes this information. The affidavit notes that "CD#1 had previously

5

been interviewed by Law Enforcement and provided information deemed to be truthful." Doc. 43-1 at ¶ 5. The affidavit then details the information that CD#1 provided, which included easily discernible and verifiable facts about Dozier including his associations, travel habits, and where he lived. *Id.*; *see also United States v. Simpkins*, 978 F.3d 1, 8 (1st Cir. 2020) (recognizing that known cooperator could be held accountable if information was false). The subsequent investigation corroborated extensively CD#1's information. Doc. 43-1 at ¶¶ 4 (corroborating association with Wheeler), 7 (corroborating address), and 8, 16, and 21 (corroborating travel habits); *see also Quezada-Enriquez*, 567 F.3d at 1233 (explaining that there is no need to establish the veracity of an informant when there is sufficient independent corroboration). And CD#1's information demonstrated familiarity with Dozier's activities and suggests CD#1 had first-hand knowledge about the information he provided. *Id.* Thus, the affidavit contains sufficient information about CD#1's veracity, reliability, and basis of knowledge. This argument does not undermine probable cause.

**Second,** Dozier argues that the affidavit only corroborates innocent, innocuous information from CD#1. The Court again disagrees. CD#1 gave information on December 10, 2018 (Doc. 43-1 at ¶ 5) and again five days later, on December 15, 2018 (*id.* at ¶ 12). CD#1 gave both interviews before officers could corroborate meaningfully his information, making his information predictive of what officers would learn. As explained above, the investigation corroborated extensively CD#1's information about Dozier's associations, travel habits, and living situation. Dozier complains that the investigation did not corroborate CD#1's statement about Dozier transporting or distributing drugs. And it is true that the affidavit does not contain any direct information on this issue (*e.g.*, controlled purchases). But this shortcoming does not undermine the totality of CD#1's information and the overall investigation. *See Illinois v. Gates*, 462 U.S. 213, 244-45

(1983) (finding a substantial basis for probable cause based on an anonymous letter detailing a suspect's travel plans to transport cocaine, when the travel plans were corroborated). Perhaps each piece of information in isolation is subject to innocent explanation but the totality of the information supports a finding of probable cause that Dozier was involved with cocaine distribution. This argument also does not undermine probable cause.

**Third,** Dozier argues that the affidavit lacks information linking Dozier's home to any criminal activity. The Court disagrees again. The Tenth Circuit puts drug trafficking in a special class of crimes and has not "required particular facts to support the inference that a drug trafficker keeps his supply at his residence." *See United States v. Mora*, 989 F.3d 794, 801 (10th Cir. 2021) (citation omitted). Here, the affidavit details TFO Salmon's experience and states his knowledge that drug traffickers conceal controlled substances and evidence of financial transactions related to narcotics trafficking in their residence. Doc. 43-1 at 8; *see e.g.*, *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) (determining that probable cause a suspect was a drug supplier justified the search of his home because drug suppliers often keep contraband in their homes). It then outlines extensive evidence supporting probable cause that Dozier was involved in cocaine distribution. And it ends by outlining fresh facts from September 17, 2019, linking Dozier's home to the investigation including Dorsey's delivery of a duffle bag to Dozier's residence and Dorsey's subsequent stop by law enforcement, when he was found with $5,000. Doc. 43-1 at ¶¶ 28-34. Based on the totality of the circumstances, the Court finds that the affidavit establishes a substantial basis for probable cause to search Dozier's home that day.

In sum, the Court disagrees with Dozier's arguments. Instead, after reviewing the text of the affidavit, the Court finds that the search warrant is supported by an adequate showing of probable cause.[2]

### B. The Particularity Requirement

Dozier next argues that the search warrant did not describe with particularity the items to be seized. Dozier notes that the search warrant in this case includes "Indicia" in the list of items to be seized. He contends that this is a broad catchall term that is not limited to a specific crime because the warrant fails to identify any crime. And he argues the affidavit cannot save the warrant because the warrant did not incorporate it. Thus, he concludes that the search warrant is a general warrant lacking particularity because it includes a broad catchall term untethered to a specific crime. Doc. 43 at 15. The government substantively disagrees and alternatively argues that the good faith exception in *Leon* upholds the search.[3]

The Fourth Amendment requires not only that warrants be supported by probable cause but also that they describe with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The amendment requires particularity in the warrant, so the particularity of a supporting document does not save a warrant from facial invalidity. *Russian*, 848

---

[2] The government argues in the alternative that the good faith exception in *Leon*, 468 U.S. at 922, applies and upholds the search even if probable cause is lacking. Although unnecessary based on the Court's probable cause analysis, the Court agrees with this alternative argument. The affidavit is 18 pages and includes over 34 paragraphs. It was sworn out by TFO Salmon—an officer with 19 years of experience and extensive experience in narcotics distribution investigations—after a long investigation. The affidavit details the results from multiple surveillance methods, including Dozier's frequent trips on I-70 and short stays at Dorsey's residence and his associations. It also includes fresh information about a weighted bag that Dorsey delivered to Dozier's residence that day. The Court finds that the officers acted in good faith and in reliance on the search warrant. The Court further finds that the warrant and affidavit are not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Thus, the good faith exception also saves the search from Dozier's probable cause challenge.

[3] The government directs the Court to *United States v. Suggs*, 371 F. Supp. 3d 931 (D. Colo. 2019), for its analysis of a similar issue. The Court reviewed the case and found it helpful in some respects but relies on Tenth Circuit precedent in resolving this motion.

8

F.3d at 1244. The particularity requirement is designed to protect against general warrants and to ensure "that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause" so that "general, exploratory rummaging in a person's belongings" is avoided. *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (citations omitted). The particularity requirement is satisfied when the description "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* (citation omitted).

The Court agrees that the warrant's use of the term "Indicia" untethered to a specific crime is problematic. But whether this combination results in the warrant failing to meet the particularity requirement is an issue the Court need not resolve because the Court finds that the good faith exception in *Leon* upholds the search.[4] More specifically, in *Leon*, the Supreme Court explained that the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral judge that is ultimately deemed invalid under the Fourth Amendment. 468 U.S. at 922. The rationale for this exception is that the purpose of the exclusionary rule is to deter police misconduct and there is nothing to deter when officers act in good faith. *Id.* at 918; *see also Russian*, 848 F.3d at 1246.

But an officer's reliance on a defective warrant still must be objectively reasonable. *Id.* Thus, *Leon* explains that the government is not entitled to the exception when the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 922-23. This is an objective test and not every deficient warrant is so deficient as to render an

---

[4] The Court discussed the doctrine of severance with the parties at the hearing. But application of the good faith exception obviates the need to determine whether "Indicia" and items seized under this term (if anything) could be severed from the warrant.

9

officer's reliance on it objectively unreasonable. *Id.* at 922 n.23. This means that a court must still review the text of the warrant and the circumstances of the search to determine whether an officer might have reasonably presumed the warrant to be valid. *Russian*, 848 F.3d at 1246.

Here, several factors lead the Court to conclude that TFO Salmon's and Agent Knooihuizen's reliance on the warrant was objectively reasonable. **First,** the text of the warrant does not render officer reliance on it objectively unreasonable. The warrant expressly states that the judge found probable cause to believe that "a crime" had been committed, specifies Dozier's home address, and authorizes the seizure of: Cocaine, Drug Paraphernalia, Cellular Telephones, United States Currency, Firearms, and Indica. Doc. 43-1 at 2-3. Although the warrant does not identify a specific crime and includes the term "Indicia," the Court finds that this language is meaningfully different from the text of other warrants that the Tenth Circuit has found beyond the good faith exception.

As a few examples, in *Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009), the warrant authorized a search for "all other evidence of criminal activity." The Tenth Circuit concluded that this defect was so obvious that no executing officer could reasonably rely on it. *Id.* at 644. And in *United States v. Dunn*, 719 F. App'x 746 (10th Cir. 2017), the search warrant authorized the search for not only any item, but also any item for any reason. The panel again held that the good-faith exception did not apply because the executing officers could not reasonably rely on the warrant. *Id.* at 752. But these cases are different and involved obviously broadening language. *Cassady* authorized officers to search for "all other evidence of criminal activity." 567 F.3d at 635.[5] And *Dunn* involved a warrant that stated that the items to be searched "include but are not limited to" nine categories of evidence that could be seized on grounds that they were criminally related or

---

[5] The Court recognizes the procedural posture of *Cassady*, but the analysis still applies. 567 F.3d at 643-44.

"other" grounds. 719 F. App'x at 748-49. Conversely, "Indicia" is not so broadening and is given context by the words surrounding it. The Court does not agree that the only reasonable reading of "Indicia" is "indicia of criminal activity" like Dozier suggests. Rather, the Court finds that the combination of "Indicia" and the failure to name a specific crime was not so flagrant and obviously problematic that a reasonable officer could not reasonably presume the warrant to be valid after considering the preceding words in the list and the overall text of the warrant.

**Second,** the context of the search supports a finding that TFO Salmon's and Agent Knooihuizen's reliance on the warrant was objectively reasonable. TFO Salmon swore out the warrant, and Agent Knooihuizen was intimately involved with the investigation and had prepared most of the federal warrants in the case. After the state court judge signed the warrant in question, Agent Knooihuizen was given a copy of the warrant and the affidavit. He acted as team leader and went over the search protocol with his team. And the officers involved in the search were familiar with the investigation. *Compare United States v. Riccardi*, 405 F.3d 852, 864 (10th Cir. 2005) (finding good faith in part because the officers executing the warrant were involved in the investigation throughout, and one of the executing officers wrote the affidavit to support the application). The context of the search indicates that the officers acted in good faith and in objectively reasonable reliance on what they believed to be a valid warrant. *See Russian*, 848 F.3d at 1247.

**Third,** the officers confined their search to the evidence specified in the warrant. The return lists the items seized, and these items fall within the specifically named categories of the warrant. Dozier initially argued that officers seized two cell phones from his person thus exceeding the scope of the warrant, which was limited to his home. But testimony at the hearing clarified that the cell phones seized from his person were unrelated to the search of his home and stemmed from

11

his state court arrest for possession of marijuana. At the hearing and for the first time, Dozier also argued that officers seized a ledger and a scale that were beyond the scope of the warrant. This untimely argument is not developed in the briefing and, regardless, a fair reading of the warrant would suggest to a reasonable officer that these items are covered by "Drug Paraphernalia."[6] These facts demonstrate that the officers understood the scope of the warrant, conducted themselves accordingly, and did not engage in a fishing expedition.

In sum, the Court finds that TFO Salmon, Agent Knooihuizen, and the other officers acted in objectively reasonable reliance on the warrant and that the good faith exception applies. The Court upholds the search of Dozier's home. The warrant was not so facially deficient that the officers could not reasonably presume it to be valid, and the exclusion of the seized evidence would not serve the purposes of the exclusionary rule. *See Russian*, 848 F.3d at 1246-48 (applying similar factors in holding the good faith exception applied to a search pursuant to a warrant authorizing seizure of cell phones within a residence, not a seizure of unspecified data from cell phones already in custody); *Riccardi*, 405 F.3d at 862-64 (finding good faith based on similar factors when a warrant was not limited to particular computer files or any particular crime). For these reasons, the Court denies the motion to suppress.

### C. Voluntariness of Dozier's Statements

Dozier also moves for a *Denno* hearing to determine the voluntariness of any of his statements that the government intends to use at trial. In *Denno*, the Supreme Court explained that a defendant is entitled to a hearing on the voluntariness of his confession when he objects to admission of incriminating statements. 378 U.S. at 380. A court determines the voluntariness of a

---

[6] Dozier also argues that the failure to identify the ledger in the return indicates bad faith. But that it not really tied to the issue before the Court and, regardless, that argument is discounted by the testimony that the ledger was identified in the FD-597 given to Dozier.

12

statement based on the totality of the circumstances and considers the following factors: "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment." *United States v. Toles*, 297 F.3d 959, 965-66 (10th Cir. 2002).

Here, Dozier makes no specific arguments in his motion about how his statements to TFO Salmon and Agent Trisha McCormick were involuntary. Instead, he simply seeks to hold the government to its burden of proving voluntariness. The Court finds that the government has met its burden.

Dozier was arrested outside his residence for possession of marijuana at around 9:00 p.m.[7] He was taken to the Topeka Law Enforcement Center and placed in an interview room, without handcuffs. TFO Salmon and Agent McCormick entered the room at 10:34 p.m. Their interactions were video recorded, and the Court has reviewed the recording. Government Ex. 3. Dozier was 42 years old at the time and answered all questions appropriately. Both interrogators were wearing street attire. TFO Salmon had an open-carry holster (the record is unclear whether Agent McCormick did too), but neither interrogator brandished a weapon during questioning. After recording Dozier's background information and verifying that Dozier had smoked marijuana that day, TFO Salmon showed Dozier a card with his *Miranda* rights and read it aloud. He then established that Dozier had smoked marijuana at 2:00 p.m. that day. TFO Salmon testified that Dozier was polite, spoke fluently, and otherwise did not appear to be under the influence of drugs or alcohol. The Court agrees with these observations.

---

[7] Agent Knooihuizen testified that he was present for the signing of the warrant at 9:06 p.m. and then went directly to Dozier's home. He further testified that Dozier was arrested around that time.

13

Although TFO Salmon and Agent McCormick told Dozier that he was facing serious charges, their tones remained conversational. Dozier admitted to smoking marijuana regularly and occasionally "partying" with powdered cocaine but otherwise deflected and offered innocent explanations for evidence found in his residence. After 23 minutes, Dozier stated, "I wish I could help you guys, but I think I'm going to need a lawyer from here on out." The interrogators ceased questioning Dozier at that point, though they responded to his ensuing remarks, until Dozier stated, "I appreciate you guys coming in." They confirmed that Dozier was done speaking, offered him water and the bathroom, and left. They reentered briefly to tell Dozier that he would be left there a while and to explain the proceeding that would occur the following day. They commented that, down the road, after he had an attorney, he could still decide to speak with them. There is no indication or allegation that Dozier was subjected to physical punishment. Under these circumstances, the Court finds that Dozier's statements to law enforcement were freely and voluntarily made. The Court denies this portion of his motion.

### III.   CONCLUSION

THE COURT THEREFORE ORDERS that Dozier's Amended Motion to Suppress (Doc. 43) is DENIED.

IT IS SO ORDERED.

Dated: May 13, 2021                    /s/ *Holly L. Teeter*
                                       HOLLY L. TEETER
                                       UNITED STATES DISTRICT JUDGE